December 15, 2007

United States District Court Judge James Ware
U.S. District Court
Northern District of California
280 South First Street
San Jose, CA. 95113

**FILED**

DEC 19 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

From: Alexander R. Ramsay
23484 Belaire Court
Los Gatos, CA 95033

Subject: Case No. C-07-3645 JW

Dear Judge Ware,

   Proceeding with my right as a joint representation client, to be involved in the subject case, I respectfully request your attention, once more, to attorney's misconduct in the subject case. I sent you a letter on Dec. 12, 2007 with regard to the questionable behavior of our attorney John Shepardson. Today I wish also to address the unethical involvement by Kerr & Wagstaffe LLP attorney Michael Von Lowenfeldt.

<u>Harassing Conduct</u>

   In a meeting only between the two attorneys on Oct. 12, 2007, Mr. Shepardson was handed a ¼ inch thick set of documents obtained from the CBE files on the subject of Shannon's grade point average in UC Davis School of Law. Mr. Shepardson, without challenging the bar, presented the documents to me, acquiescing with the bar's misuse of this information. Shannon's GPA was compared with rankings on each of four bar exams, showing Shannon was in a lower ranked group on bar scores. Her private data was obtained from the Committee of Bar Examiners without the required written permission from Shannon. The response has been that defendant's law firm had the right to do so in the client-attorney relationship. However, the contention is that the defendant has no right to impugn Shannon's worthiness to practice law based upon her GPA. This information has nothing to do with any of the causes of action in Shannon's present case and constitutes harassing conduct per Model Rule 4.4. I ask the court to reprimand the bar attorneys for such unethical practices in their "win at all costs" conduct.

   Furthermore, it is obvious that this same practice can be used to categorize all test-takers who once fail an exam with the potential of stigmatizing repeaters. The pass rate is only 19% for repeaters.

And one additional point. UCLA Law School Professor Richard Sander on Nov. 9, 2007 in the first "open session" after Shannon's many closed sessions, had his request for bar exam statistics with the Board of Governors denied (see attachment). The same CBE willingly gave up Shannon's private stats without question and without written approval. In light of the potential use by the CBE of private data for devious purposes, as in Shannon's case, a court order should be entered that prevents the bar from obtaining any such data in the admission's process. Time permitting, I shall add this subject to my request for legislation.

### More Harassing Conduct

Attorney John Shepardson, on short notice, drove to Shannon's apartment on Nov. 11, charging $250 an hour for the four-hour roundtrip in order to shove documents for signature under Shannon's unseeing eyes at a time when she was suffering emotional distress and fatigue, all for the purpose of dividing father and daughter.

### Drop the Case

I was informed by our attorney John Shepardson for the first time on Dec. 13, that the bar has offered to accept only the publication of percent passage rate of disabled persons in exchange to "drop the case." Dropping the original five causes of action was never authorized by Shannon. This constitutes a breach of duty on the part of the attorney.

Confirming my allegation that a deal between the two attorneys took place, is the fact that the CMC was cancelled by a "joint statement" by the two attorneys with an immediate attempt to draft Summary Judgments, intended to circumvent due process wherein Shannon, once again, has never been given the opportunity to confront her oppressors nor touch the evidence.

May I, respectfully, again request that you call before you, all concerned and require this case to proceed upon a legal and ethical track.

Sincerely,

*Alexander R. Ramsay*

Alexander R. Ramsay



# BAR JOURNAL

Search CBJ

Sander@law.ucla.edu

## Race data for bar admissions research stays under wraps

A researcher who wants historical data on the background of applicants for the California bar exam to study the effects of affirmative action on law students was turned down last month when bar governors said they were obligated to protect the students' privacy. The board of governors unanimously backed its Committee of Bar Examiners, which months ago rejected the request by UCLA law professor Richard Sander.

Sander and his team want the data to test his controversial "mismatch theory" that race-based preferences permit minority students to attend law schools for which they are academically unprepared. The upshot, he believes, is that they learn less, are less likely to graduate and are almost twice as likely to fail the bar exam. His team is seeking LSAT scores, race, gender, law school, grades for law school and undergraduate study and bar exam scores.

But at a hearing last month crowded with law students and young lawyers who oppose the release of their data, the bar's Committee on Regulation, Admissions and Discipline agreed with the bar examiners and voted 7-0 to withhold the data. The full board voted unanimously the next day.

Alan Yochelson, chair of the bar examiners panel, said the committee's decision was "not based on the merits of affirmative action but on a consensus that applicants did not provide their data . . . for study by a third party not related to the bar." While the committee has a history of doing research related to the exam and continually evaluates the exam for fairness, it cannot make public applicant information without individual signed releases, he said.

"The data would be of benefit to the public regardless of what it points to," said public member George Davis. But, he added, forms signed by law students when they register with the bar "promised confidentiality" and the bar must uphold its guarantee of privacy.

Several students said they were either the only minority or one of a handful in their class, so information about them could be easily identified. "Our numbers are too small to protect our information," said Alina Ball, the only black female in UCLA's law school class of 2008, who also said releasing personal data would be an incentive for future applicants to keep such information private. And, she worried, "How far will disclosure go?"

Stanford Law School Dean Larry D. Kramer sent a letter to the board explaining that schools are bound by the federal Family Education Rights and Privacy Act (FERPA), which both provides strict protection of student records and establishes rules governing the disclosure of such data. "I believe that the use of these records envisioned by the Sander team would violate FERPA," Kramer wrote.

He added that the request for access to the information by the Sander team is "flatly inconsistent with the understood conditions under which bar applicants provided it."

In addition, human subject research is governed by other federal law that requires review by an Institutional Review Board (IRB). "Our objection is not out of fear the research will expose an inconvenient truth," said Cheryl I. Harris, a professor at UCLA law school. "The issue is how it is to be done."

harris@law.ucla.edu

Opponents of releasing the data said specific written consent from study participants is required for Sander's research to go forward.

Sander, however, said the discussion of his proposed study was full of misconceptions: no data will be made public and no student will be identifiable, he said. He called the FERPA and IRB arguments "complete red herrings."

Vikram Amar, a professor at the UC Davis law school and a member of Sander's team, said he does not believe the mismatch effect is as strong as his colleague, "but it raises substantial questions." He disputed the critics' belief that the research group has an agenda and added the issue of confidentiality to the list of red herrings.

"If you screen out the noise," Amar said, "the only thing to fear (to paraphrase Franklin Roosevelt) is continued ignorance itself."

Gerald Reynolds, chair of the U.S. Commission on Civil Rights, also spoke on Sander's behalf, arguing that if his theory is correct, "some minority students are being harmed. If that's true, we need to minimize the disparity in bar pass rates."

He characterized the issue as one of consumer protection and said the research would provide valuable information to law schools and bar associations.

"We should not be in a position where we're scared of the data," Reynolds said. "We should have the courage to allow the researchers to take a look."

Sander said after the vote that he was disappointed "but not surprised. We will pursue our legal options."

Contact Us    Site Map    Notices    Privacy Policy

© 2007 The State Bar of California

Alexander R. Ramsay
Antje Skiba Ramsay
23484 Belaire Court
Los Gatos, CA 95033

U.S. District Court, Northern District
U.S. District Court Judge James Ware
280 South First Street
San Jose, CA 95113

SAN JOSE CA 951
17 DEC 2007 PM 4 T

951134502