JOHN A. SHEPARDSON, ESQ.   SBN: 129081
59 North Santa Cruz Avenue, Suite Q
Los Gatos, California 95030
Telephone: (408) 395-3701
Facsimile: (408) 395-0112

Attorneys for Plaintiff,
SHANNON ALYNN RAMSAY

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| SHANNON ALYNN RAMSAY, | CASE NO.: **C-07-3645 JW** |
| Plaintiff, | **PLAINTIFF'S NOTICE OF MOTION FOR PARTIAL SUMMARY JUDGMENT; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| v. | |
| THE STATE BAR OF CALIFORNIA, and DOES 1 - 100 inclusive. | [EVIDENCE FILED SEPARTELY] |
| Defendants. | Date: February 25, 2008<br>Time: 9:00 A.M.<br>Dept.: Courtroom 8, 4th Floor<br>Judge: Honorable James Ware |

### NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT

TO DEFENDANT THE STATE BAR OF CALIFORNIA, ITS ATTORNEYS OF RECORD, AND TO THE COURT CLERK:

PLEASE TAKE NOTICE that on February 25, 2008 at 9 a.m., or as soon thereafter as counsel may be heard in Courtroom 8 of the United States District Court for the Northern District of California, located at 280 South 1st Street, San Jose, CA, Plaintiff Shannon Alynn Ramsay will move, and hereby does move, for partial summary judgment on her claim that Defendant has violated the Americans with Disabilities Act ("ADA") by failing and refusing to provide her, and those of her minority class equal

privileges, and benefits, by failing and refusing to compile and publish the California State Bar Examination passage rates for disabled applicants, when the rates for other minority groups are recorded, calculated, and published. This motion is brought on the ground that no triable issue of fact exists and that Mr. Ramsay is entitled to a partial judgment as a matter of law.

Ms. Ramsay's motion is based on this Notice, the following Points and Authorities, the accompanying Declaration of John A. Shepardson, all pleadings, records and documents on file herein, and such additional evidence and argument as may be properly introduced in support of the motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

"**Every mile is two in Winter**" Jacula Prudentum.

The reality for Shannon, whether *summer or winter*, is every mile is ten. She is blind. The Americans With Disabilities Act ("ADA") was passed to open previously closed doors of economic and social opportunity for the disabled—however, the ADA, like other laws, has no true significance, unless enforced.

Through intelligence, willpower and family support, she graduated from Stanford University (2003), and U.C. Davis Law School (2005). She has not passed the California Bar Exam after four attempts. Shannon continues her quest to pass the Bar.

Her Complaint identifies a host of issues relating to the Bar Examination. This motion addresses a single issue for this Court's consideration:

> **Why is the Bar treating disabled test-takers differently than other minority groups in its refusal to compile and publish examination passage rates for the legally disabled?**

Are the passage rates for disabled applicants in the single digits, as she is informed and believes? Shouldn't there be *full and equal disclosure* for disabled applicants, and for the disabled who are contemplating attempting the arduous task of becoming California licensed attorneys? If it is important enough to compile the data and post the passage rates for other minority groups, then why not do so for the disabled? Gathering of minority group passages rates assists The Bar in evaluating the exam itself, so why exclude disabled applicant data from the process?

The train has left the station without the disabled.

The standards of the ADA are clear. The Bar is violating them. The Bar is on notice of its continuing violation, and still refuses to compile or publish disabled students passage rates. Thus, Shannon suit seeks an order from the court to order compliance.

## II.   BRIEF STATEMENT OF FACTS

It is undisputed that Shannon is legally blind (JAS Dec).

It is undisputed that Shannon has attempted to pass the California Bar Exam on four occasions, without success (JAS Dec).

It is undisputed that the Bar publishes the passages rates for several minority groups (JAS Dec, Ex-1).

It is undisputed that the Bar does not publish the passage rates for disabled students (JAS Dec, Ex-1, marked area).

It is undisputed that The Bar purports to promote diversity in the legal profession (JAS Dec, Ex-2, underlined areas).

It is undisputed that The Bar admits it gathers race/ethnicity and gender passage rates to "assist in the continuing evaluation of the examination." (JAS Dec, Ex-3).

## III. LEGAL STANDARD

Summary judgment is proper where there is no genuine issue as to a material fact and the moving party is entitled to judgment. Fed. R. Civ. Pro. 56©; Celotex Crop. V. Catrett, 477 U.S. 317, 322 (1986).

To avoid summary judgment, Defendant must produce evidence of sufficient caliber to support a judgment in their favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986) (opposing party must present "evidence upon which a jury can properly proceed to find a verdict for the party producing it"). Such evidence must be real and substantial, not merely colorable. Id. At 249-50 ("The mere existence of a scintilla of evidence…will be insufficient"); Matsushita Elec. Indus. V. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (opposing party "must do more than simply show there is some metaphysical doubt as to the material facts"). Evidence that could not justify a finding for plaintiffs by the applicable evidentiary standard will not defeat summary judgment. Neely v. St. Paul Fire & Marine Ins. Co., 584 F.2d 341, 346 (9th Cir. 1978). If Defendants cannot produce evidence supporting their allegations, the Court can only conclude there is none. Collin v. Am. Empire Ins. Co., 21 Cal.App. 4th 787, 808 (1994).

## IV. ARGUMENT

### A. DEFENDANT HAS VIOLATED TITLE II OF THE ADA.

#### 1. ADA Public Policy.

Title 42 of the United States Code is entitled:

> EQUAL OPPORTUNITY FOR INDIVIDUALS WITH DISABILITIES.

Section 2101 sets forth the findings for passing the ADA:

(a) Findings. – The Congress finds that–

(1) some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

(2) historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

(3) discrimination against individuals with disabilities persists in such critical areas as employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

(4) unlike individuals who have experienced discrimination on the basis of race, color, sex, national origin, religion, or age, individuals who have experienced discrimination on the basis of disability have often had no legal recourse to redress such discrimination;

(5) individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and <u>relegation to lesser services, programs, activities, benefits</u>, jobs, or other opportunities; (emphasis added)

(6) census data, national polls, and other studies have documented that people with disabilities, as a

group, occupy an <u>inferior status</u> in our society, and are severely disadvantaged socially, vocationally, <u>economically</u>, and educationally; (emphasis added)

(7) individuals with disabilities are a <u>discrete and insular minority</u> who have been faced with restrictions and limitations, subjected to a history of purposeful unequal treatment, and relegated to a position of political powerlessness in our society, based on characteristics that are beyond the control of such individuals and resulting from stereotypic assumptions not truly indicative of the individual ability of such individuals to participate in, and contribute to, society;

(8) the Nation's proper goals regarding individuals with disabilities are to assure <u>equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals</u>; and (emphasis added)

(9) the continuing existence of unfair and unnecessary discrimination and prejudice <u>denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities</u> for which our free society is justifiably famous, and <u>costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity</u>. (emphasis added)

(b) Purpose. – It is the purpose of this chapter–

(1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;

PLNTF'S MO FOR PARTIAL SUM JUDGMT & P'S & A'S IN SUP    CASE NO.: C-07-3645 JW

>(3) to ensure that the Federal Government plays a central role in enforcing the standards established in this chapter on behalf of individuals with disabilities; and
>
>(4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day- to- day by people with disabilities. [1]

These are public policies for requiring both the business and government sectors to provide the legally disabled with the means to more fully integrate into our society, and shouldn't no less an entity that The California State Bar should and want to comply with the spirit and letter of the ADA? Shouldn't the Bar want to be in the vanguard, leading the way, and setting an example for others to follow? The fact that Defendant is lagging in compliance is unacceptable, particularly when it is so easy compile the data, and to publish, the disabled applicant's passage rates, right along next to the other minority group passage rates.

2. <u>Shannon is a disabled person pursuant to the ADA.</u>

ADA § 12102 states:

The term "disability" means, with respect to an individual

>(A) a physical or mental impairment that <u>substantially limits one or more the major life activities</u> of such individual;

---

[1] "It is also the legislative policy of the State of California to 'mainstream' developmentally disabled persons..." <u>Cable v. Department of Developmental Services of the State of California</u>, 973 F. Supp. 937, 938.

---

(B) a <u>record of such an impairment</u>; or

(C) being <u>regarded as having such impairment</u>. (emphasis added)

Clearly, Shannon's total blindness satisfies any and all of the above-criteria.

3. <u>The ADA Prohibits Discrimination by Public Entities.</u>

Subchapter II states in pertinent part:

'SUBCHAPTER II – PUBLIC SERVICES

Part A – Prohibition Against Discrimination and other Generally Applicable Provisions

"Section 12131. Definitions.
As used in this subchapter:

(1) Public entity

The term "public entity" means

    (A) any State or local government;

    (B) any department, agency, special purpose district, or other <u>instrumentality of a State</u> or States or local government; and (emphasis added)

    (C) the National Railroad Passenger Corporation, and any commuter authority (as defined in section 24102(4) of title 49).

(2) Qualified individual with a disability

The term "qualified individual with a disability" means an individual with a disability who, with or without reasonable modification to rules, policies, or practices, the removal of

architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

Section 12132.  Discrimination.

Subject to the provisions of this subchapter, <u>no qualified individual</u> with a disability shall, by reason of such disability, <u>be excluded from participation in or be denied the **benefit of services, programs,** or activities of a public entity, or be subjected to discrimination</u> by any such entity. (emphasis added)

Section 12133.  Enforcement

The remedies, procedures, and rights set forth in section 794a of title 29 shall be the remedies, procedures, and rights this subchapter provides to any person alleging discrimination on the basis of disability in violation of section 12132 of this title.

Section 12134.  Regulations.

Not later than 1 year after July 26, 1990, the Attorney General shall promulgate regulations in an accessible format that implement this part.  Such regulations shall not include any matter within the scope of the authority of the Secretary of Transportation under section 12143, 12149, or 12164 of this title.

(b)  Relationship to other regulations

Except for 'program accessibility, existing facilities', and 'communications', regulations under subsection (a) of this section shall be consistent with this chapter and with the coordination regulations under part 41 of title 28, Code of Federal Regulations (as promulgated by the Department of Health, Education, and Welfare on January 13, 1978), applicable to recipients of Federal financial assistance under

section 794 of title 29.  With respect to 'program accessibility, existing facilities', and 'communications', such regulations shall be consistent with regulations and analysis as in part 39 of title 28 of the Code of Federal Regulations, applicable to federally conducted activities under section 794 of title 29.

(c) Standards

Regulations under subsection (a) of this section shall include standards applicable to facilities and vehicles covered by this part, other than facilities, stations, rail passenger care, and vehicles covered by part B of this subchapter.  Such standards shall be consistent with the minimum guidelines and requirements issued by the Architectural and Transportation Barriers Compliance Board in accordance with section 12204(a) of this title.

First, Defendant, as an instrumentality of the State, is clearly providing a Public Service, and is subject to the ADA.

Second, the Act's language clearly precludes denial of benefits to the disabled that are otherwise available to the nondisabled.  The nondisabled minority groups have the benefit of their Bar Exam passage rates being considered in evaluating the examination, as well as have the rates published.  The disabled are denied this service and benefit.  Thus, Defendant is in clear violation of the ADA Act.

    4.   <u>28 Code of Federal Regulation ("CFR") Part 35 sets forth the Department of Justice's regulations of Public Services pursuant to the ADA.</u>

The regulation summary states in pertinent part:

> "SUMMARY: This rule implements subtitle A of title II of the Americans with Disabilities Act, Pub. L. 101-336, which prohibits discrimination on the basis of disability by public entities. Subtitle A <u>protects qualified individuals with disabilities from discrimination</u> on the basis for disability in the <u>services, programs or activities</u> of all state and local governments. (emphasis added)
>
> CFR § 35.130 states in pertinent part:
>
> (a) <u>No qualified individual with a disability</u> shall, on the basis of disability, be excluded from participation in or be denied the benefits of the <u>services, programs, or activities of a public entity, or be subjected to discrimination by any public entity</u>. (emphasis added)
> (b) (1) A public entity, in providing any aid, benefit, or service, may not, directly or through contractual, licensing or other arrangements, on the basis of disability—
> (i)  Deny a qualified individual with a disability the opportunity to participate in or benefit from the aid, <u>benefit or service</u>;
> (ii) Afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is <u>not equal</u> to that afforded others;
> (iii) Provide a qualified individual with a disability with an aid, benefit, or service that is <u>not as effective</u> in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others;
> (vii) Otherwise <u>limit</u> a qualified individual with a disability in the enjoyment of any <u>right, privilege, advantage, or opportunity enjoyed by others</u> receiving the aid, benefit, or service; (emphasis added)

The regulations reiterate that the disabled must be provided benefits and services <u>equal</u> and to those of the nondisabled. Defendant has chosen to not compile or publish disabled applicants passage rates.

---

PLNTF'S MO FOR PARTIAL SUM JUDGMT & P'S & A'S IN SUP    CASE NO.: C-07-3645 JW

Thus, Defendant's violation of the regulations applicable to the ADA reinforces the notion that Defendant is violating the ADA.

> 5. <u>Defendant can reasonably accommodate Shannon (and other disabled test-takers) by publishing Bar passage rates.</u>

The ADA defines reasonable accommodation as:

> (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and
> (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and <u>other similar accommodations for individuals with disabilities</u>. (emphasis added)

Defendant can easily accommodate Shannon's request for compiling and publishing passage rates for disabled test-takers. By using the definition of a disabled as set forth in the ADA, and having applicants self-report, as is the case for other minority groups, the raw data can be easily obtained. Defendant can then compile the data, and publish—by simply following the same procedures that presently exist for other minority groups that have their passage rates compiled and published.

> 6. <u>It is not an undue hardship for Defendant to publish disabled test-takers passage rates.</u>

The ADA defines "Undue Hardship" as:

(A) In general

> The term "undue hardship" means an action requiring <u>significant difficulty expense</u>, when considered in light of the factors set forth in subparagraph (B). (emphasis added)
>
> (B) Factors to be considered
>
> In determining whether an accommodation would impose an undue influence hardship on a covered entity, factors to be considered include
>
> > (i) the nature and cost of the accommodation needed under this chapter;
> >
> > (ii) the overall financial resources of the facility or facilities involved in the provision of the reasonable accommodation; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such accommodation upon the operation of the facility;
> >
> > (iii) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type and location of its facilities; and
> >
> > (iv) the type of operation and operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative, or fiscal relationship of the facility or facilities in question to the covered entity.

As stated above, Defendant can easily publish the disabled test-takers passage rates. The incremental cost for compiling and publishing disabled applicants passage rates must be negligible.

7. <u>Defendant is not immune from ADA requirements.</u>

ADA § 12202 states:

A State shall not be immune under the eleventh amendment

to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter. In any action against a State for a violation of the requirements of this chapter, remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in an action against any public or private entity other than a State.

Defendant, as an instrumentality of the State of California, is not immune from the ADA laws.

8. <u>This Court must issue an Injunction.</u>

"'In addition, the ADA statute is clear that 'either a continuing or a threatened violation of the ADA is an injury within the meaning of the Act.' <u>Pickern v. Holiday Quality Foods, Inc.</u>, 293 F.3d 1133, 1136 (emphasis added). Here, it is clear that Plaintiff can obtain relief through a permanent injunction prohibiting Defendant from blocking the handicap parking spaces." <u>Watanabe v. Home Depot USA, Inc.</u>, U.S. Dist. Lexis 27016 (C.D. Cal.. Aug 26, 2003) at p. 13.

Thus, the ADA authorizes injunctions. The Bar is continuing to violate the ADA by not providing equal privileges and services to the disabled applicants. An injunction must be issued to effectuate compliance.

## IV. CONCLUSION

Shannon is a "Qualified Individual With Disability". She is repeat Bar Examinee test-taker. The ADA requires Defendant to provide the disabled with the same benefits and services as is provided to the nondisabled. Defendant compiles and publishes passage rates for other minority groups, and does not for the disabled. The Bar is violating the

ADA. It is a reasonable accommodation to compile and publish the disabled test-taker passage rates, and is not an "Undue Hardship". Therefore, Plaintiff respectfully requests a permanent injunction be issued requiring The Bar to comply with the ADA. Ms. Ramsey reserves her claim for attorney fees.

DATE:  January 1, 2008

_____
JOHN A. SHEPARDSON, Attorney for
Plaintiff SHANNON ALYNN RAMSAY